01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,　　　　　)　　CASE NO.: CR01-325-TSZ
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　)　　SUMMARY REPORT OF U.S.
　　　　　　　　　　　　　　　　　　　)　　MAGISTRATE JUDGE AS TO
GEORGE LAVELL FROST,　　　　　　　　)　　ALLEGED VIOLATIONS
　　　　　　　　　　　　　　　　　　　)　　OF SUPERVISED RELEASE
　　　　　Defendant.　　　　　　　　　)
_____)

　　　　An evidentiary hearing on supervised release revocation in this case was scheduled before me on July 7 and July 15, 2005.  The United States was represented by AUSA Jeffrey B. Coopersmith and the defendant by Kenneth E. Kanev.  The proceedings were recorded on cassette tape.

　　　　Defendant had been sentenced on or about December 14, 2001 by the Honorable Thomas S. Zilly on a charge of Wire Fraud and sentenced to 18 months in custody, 3 years supervised release.

　　　　The conditions of supervised release included requirements that defendant comply with all local, state, and federal laws and with the standard conditions of supervision.  Other special conditions included no firearms, narcotic addiction/drug dependency treatment and mandatory testing, refrain from alcohol and other intoxicants, submit to search, provide access to financial information, maintain a single checking account and disclose information regarding the account

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 1

01  to probation officer, make records available to probation officer if engaged in a business, disclose

02  all assets and liabilities and do not transfer assets without consulting with probation officer, do not

03  incur new credit obligations without permission, no employment in mortgage lending and/or

04  banking, no employment by friends, relatives, associates or persons previously known to defendant

05  without permission of probation officer, do not accept employment without approval of probation

06  officer, do not work for cash, provide employment pay stubs to probation officer,  and restitution

07  in the amount of $220,570. (DKT 16, EX 1)[1]

08          Defendant filed a motion to amend the conditions of supervised release to be allowed to

09  be employed in the mortgage lending/banking industry (DKT 18, EX 4), but the motion was

10  denied (DKT 21, EX 6).  The judgment was amended on September 22, 2003 to change the

11  amount of restitution to $216,620. (DKT 22, EX 2)

12          In an application dated February 3, 2005, Senior U.S. Probation Officer Michael K. Banks

13  alleged the following violations of the conditions of supervised release:

14          1.      Committing the crime of making false statements, in violation of 18 U.S.C. §1001,

15  on or about February 2, 2004, March 1, 2004, April 1, 2004, and May 1 ,2004.

16          2.      Committing the crime of wire fraud, in violation of 18 U.S.C. §1343, from in or

17  about January 2004 until the present, in violation of the general condition that he not commit any

18  federal, state or local crime.

19          3.      Committing the crime of tampering with a witness, in violation of 18 U.S.C.

20  §1512(b)(3), in or about November 2004, in violation of the general condition that he not commit

21  any federal, state or local crime.

22          4.      Failing to disclose interest in a business or enterprise, in violation of special

23  condition #8.

24          5.      Failing to maintain a single checking account in the defendant's name, in violation

25  _____

26          [1] References to the court docket will be cited as "DKT".  References to the transcript of
the evidentiary revocation hearing will be cited as "TR".  References to the exhibits from the
evidentiary revocation hearing will be cited as "EX".

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 2

01  of special condition #7.

02       6.       Being self-employed without prior approval, in violation of special condition #12.

03       7.       Changing residence without permission, in violation of standard condition #6.

04  (DKT 23)

05       Defendant was advised in full as to those charges and as to his constitutional rights, and

06  requested an evidentiary hearing before a Magistrate Judge (DKT 26).  The hearing was held on

07  July 7 and July 15, 2005, at which time testimony was taken, exhibits were admitted into evidence,

08  and the argument of the parties was considered (DKT 38, 40). The parties were given the

09  opportunity to file additional closing memoranda by July 29, 2005. The matter is now ready for

10  decision.

11                                    **Case History**

12       George Lavell Frost[2] was charged by Information with committing the offense of wire

13  fraud in violation of 18 U.S.C. §1343.  Defendant waived Indictment and pled guilty to this

14  offense on September 19, 2001.  (DKT 7).  In the plea agreement, defendant admitted that he

15  utilized a business known as Frost Enterprises and other businesses to defraud investors by falsely

16  telling such investors that their funds would be placed in income-producing enterprises such as real

17  estate loans and projects, an adult care facility, and a mortgage brokerage business, and securing

18  their investments with real property while having no security interest or other interest in such real

19  property.  Defendant admitted that funds were used for purposes neither disclosed to investors nor

20  authorized by them, including for his own personal use and benefit, and failed to disclose material

21  facts to investors such as the uses to which the money would be put, the risks of the investments,

22  and other material facts.  (DKT 6, EX 3).  Defendant was sentenced on December 14, 2001 and

23  remanded to the custody of the United States Bureau of Prisons.  He commenced supervision on

24  May 23, 2003 with the United States Probation Office.  U.S. Probation Officer Leroy Washington

25  was assigned to supervise Mr. Frost, followed by Michael Banks upon Mr. Washington's

26  _____

          [2] The defendant is usually referred to in the transcript and exhibits as "Lavell".

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 3

01 retirement. (TR 6)

02 **Summary of Allegations**

03    The United States contends that defendant violated his supervised release by falsely

04 reporting on his monthly probation reports that he was employed by Apex Marketing, which the

05 government asserts was a sham business constructed for the purpose of covering up Mr. Frost's

06 true employment  working for a family owned company called Prime Realty.  In the course of his

07 actual employment, not disclosed to his probation officer, he is alleged to have committed the

08 crime of wire fraud by recruiting "straw buyers" to fill out mortgage loan applications with false

09 information which he arranged to have fraudulently verified.  As a result of this alleged scheme,

10 money was disbursed to him by interstate wire from the proceeds of the mortgage loan.  As part

11 of the scheme, the houses were to be  resold and the defendant would realize further profit from

12 the re-sale.  These actions form the basis for the allegation that defendant  violated the condition

13 of supervised release which required him to be employed lawfully.  He is further alleged to have

14 committed or attempted to commit the crime of witness tampering by "corruptly persuading" (*cf*

15 *18 U.S.C. §1512(b)(3)*) one of the aforementioned straw buyers to give false information to the

16 FBI regarding the real estate transactions.  He is alleged to have an interest in and to be employed

17 by the family business Prime Realty which he failed to disclose, to have failed to maintain a single

18 bank account into which he deposited all income and from which he made payments for personal

19 expenses, and to have been residing at a location which he did not disclose to his probation officer.

20    Defendant denied the allegations.

21 **Findings of Fact**

22 *Monthly Reports*

23    Shortly before his release from custody to commence supervised release, the defendant met

24 with Calvin Bethea at the United States Probation Office and reviewed the terms of supervised

25 release, signing a document to indicate that he fully understood the conditions and had been

26 provided a copy of them. (EX 7 (entry of April 22, 2003), EX 7A, TR 18-19)

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 4

01  Upon commencing supervision, the defendant submitted monthly reports to his probation

02  officer.   Initially, the defendant reported intermittent periods of employment with CNA

03  Construction  interspersed with periods of unemployment, submitting his paycheck stubs to his

04  probation officer as required. (EX 7 (pages 3-4), EX 8-16) Each report signed by the defendant

05  contained a warning that any false statement could result in revocation of supervised release,

06  imprisonment, or a fine.

07  *Employment with Prime Realty*

08  In the monthly report for February 2004, defendant reported employment as a "marketing

09  rep" by Apex Marketing in Renton, Washington.  He reported his immediate supervisor was

10  Shawnette Sampson, and that his first paycheck would be $1500. In response to other questions

11  on the report form, he stated that he did not have a checking or savings account, and that the only

12  other cash inflow he had received that month was $400 from his parents.  (EX 18) The next

13  month, defendant continued to report employment by Apex Marketing and stated that he had

14  received $1,261.50 net wages from employment, producing a photocopy of a check purportedly

15  drawn on the account of Apex Marketing Northwest, and a pay stub.  (EX 19) Similar  reports

16  were filed in April and May 2004, with net wages of $856.04 from Apex Marketing reported in

17  each of those months. (EX 20, 21). Defendant produced a letter on Apex Marketing letterhead,

18  signed by Shawnette Sampson, verifying his employment.  (EX 19, page 5)

19  Then, in a meeting with Mr. Banks on May 27, 2004, the defendant reported that he had

20  been laid off by Apex Marketing. (TR 20, EX 7 page 7) He reported being unemployed on the

21  June, July, August, September and October 2004 monthly reports (EX 21-26).   Defendant

22  "adamantly" denied having business dealings with Prime Realty, a business owned by his parents,

23  and "stated  point blank that he was not receiving any monies in regards to his association with

24  Prime Realty". (TR 35, 46-47)

25  In reality, Apex Marketing was only a shell.  It did no business and generated no income,

26  and certainly did not pay the defendant any wages.  Ms. Sampson did not supervise the defendant,

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 5

01 did not pay him any wages, and had no connection with Apex Marketing other than to follow the

02 defendant's instructions to set up a bank account, obtain a business license and establish a Paychex

03 payroll account. The defendant asked Ms. Sampson to cover for him with his probation officer.

04 (TR 59) The defendant misrepresented his criminal record to Ms. Sampson. (TR 58) The purpose

05 of Apex Marketing was to serve as a cover-up for defendant's true source of income, procuring

06 mortgage loans by providing false information on loan applications, utilizing "straw buyers" who

07 did not have the financial ability to purchase homes.

08       Testimony was provided at hearing by three young women who were induced by the

09 defendant to be straw buyers for such properties, Shawnette Sampson, Selena Sheppard, and

10 Fahmia Ali. I found all three to be credible witnesses, who testified in detail and appeared to be

11 forthright and candid.

12       Shawnette Sampson testified that the defendant arranged to have her purchase three

13 houses, (517 S. 38th Street in Tacoma, 908 S. Cushman Street in Tacoma and 10222 Waters Ave

14 South in Seattle) which would then be re-sold. (TR 63) She was promised by the defendant that

15 she would be given $10,000 in exchange for the use of her credit. The defendant promised her

16 that "his company" would pay the mortgage while the re-sale was pending. (TR 75) For the South

17 Cushman property, the defendant gave her a blank promissory note to sign which he later filled

18 in without her knowledge or permission, obligating her to pay the seller of the house $40,000.

19 (TR 70, EX 30) Prime Realty was paid $30,000 for this sale. (EX 31) The owner of the Tacoma

20 property on S. 38th Street testified the defendant presented the purchase offer to him and was the

21 person he negotiated with. The property owner never met Ms. Sampson. (TR 109) The defendant

22 told the property owner that Ms. Sampson was listed as the purchaser because she was one of the

23 investors in the company and "one of the people that they used to buy houses". (TR 109-111)

24 Prime Realty received $20,000 from the sale. (TR 72, 121, 165-166, EX 53, 56) Ms. Sampson

25 received $10,000.

26       The defendant unsuccessfully attempted to procure a resale of the house on S. 38th Street

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 6

01  to another woman, Selena Sheppard, (EX 34, 35) who the defendant also induced to act as a straw

02  buyer in another transaction for a property at 26th Avenue South (EX 41). She testified that she

03  did not know that he was also attempting to have her purchase the S. 38th Street house. (TR 252,

04  258-259)

05       Ms. Sheppard worked with the defendant in his connection with Prime Realty, which he

06  told her was a family business. The defendant prepared all the paperwork for the deals.  (TR 257,

07  259) A false employer was listed, with false income information. (TR 251-252, EX 35, 41) The

08  defendant's phone number was listed on one application as Ms. Sheppard's employer's business

09  phone (EX 35) so that the defendant would be called when the mortgage credit company

10  attempted to verify Ms. Sheppard's employment, and Ms. Sheppard's mother's phone number was

11  falsely listed as her employer on another. (TR 136-142, 152-153, EX 39, 41, 57) The defendant's

12  phone number was also falsely listed as Ms. Sheppard's landlord, so the mortgage credit company

13  would call the defendant to verify Ms. Sheppard's rent account in order to evaluate her

14  creditworthiness.  The defendant listed Prime Realty as Ms. Sheppard's landlord, which was also

15  false, as she was living with her parents.  (TR 150-152, 244, EX 40)  The defendant accompanied

16  Ms. Sheppard to the real estate closing.

17       Upon completion of the mortgage loan transaction, the loan proceeds were sent by

18  interstate wire from the Bank of America in Orange, California to the escrow company in Seattle.

19  (TR 155-157, EX 43) The sum of $35,000 was paid to Prime Realty & Investment LLC as a

20  "consultant".  (EX 43, page 2,6) The funds were sent by interstate wire to Prime Realty's Banner

21  Bank account. (EX 43, page 4, 5, TR 159-161)

22       A third young woman, Fahmia Ali, was also induced to act as a straw buyer by the

23  defendant for property on S. Alaska Street in Seattle and the S. Cushman property in Tacoma that

24  had been purchased by Ms. Sampson. (EX 46)  He explained to her that he worked with Prime

25  Realty to get individuals to buy houses in their name and in six months he would sell the houses

26  and make a profit, and she would receive a small percentage.  (TR 188-189)  The defendant

01 assisted her in filling out the applications and obtaining the loans.  He told her to sign the forms

02 with false information concerning her place of employment, monthly income and other

03 information.  He had her sign one of the loan applications in blank.  (TR 191-200, EX 48) A rent

04 verification form was completed with a false address, listing two different (false) addresses for Ms.

05 Ali, and two different (false) landlords. (EX 51, 52, TR 163-164, 200-202) The defendant took

06 her to the mortgage closing for one property and his sister-in-law went with her to the next. (TR

07 203, 220) He told her that if she was interested in going into the real estate business, he or "his

08 company" would pay for her real estate class. (TR 216)

09                                          *FBI Investigation*

10          When Ms. Ali, age 19, told her mother about the transactions, her mother and her mother's

11 friend convinced her to have second thoughts and to report the transaction to the police, and then

12 to the lending institution, Washington Mutual.  As she was leaving the Washington Mutual office,

13 she got a cell phone call from the defendant, who had been alerted to her visit by the Washington

14 Mutual employee.  The phone call scared her. (TR 207) The defendant asked to meet with her (TR

15 235), and wanted to know exactly what she told the bank.  He said she should be prepared to talk

16 to the FBI and that she should cooperate.  (TR 210, 227) He  instructed her to lie to the FBI by

17 saying that he didn't have any affiliation with or work for Prime Realty, that the information on

18 the mortgage application regarding her two year employment at Prime Realty was a typographical

19 error, and that she had intended on living in the house but changed her mind. She did not lie as he

20 instructed.  (TR 210-211)

21                                         *Listing of Residence*

22          The defendant listed his parents' address as his residence on his monthly reports (EX 10-

23 27), but the evidence establishes that for at least August through November 2004, the defendant

24 was living at 10222 Waters Avenue South (TR 123-130, 202), which was one of the addresses

25 that was falsely listed as a residence for Ms. Ali (EX 46, 52) and one of the properties that was

26 purchased and resold by Ms. Sampson. (TR 74).

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 8

***Bank Account and Cash Flow***

The record establishes that the defendant received payments from the Prime Realty checking account at Banner Bank from October 2003 through November 2004.  (EX 54) Thirty separate checks were written either to "Cash" or to Lavell Frost, each of which was endorsed by Lavell Frost, in amounts ranging from $55 for copying reimbursement to as much as  $2,200. None of these payments were reflected on the defendant's monthly reports to his probation officer.

<u>**Recommendations Regarding Violations**</u>

I recommend the Court find that defendant violated his supervised release as alleged in **<u>Violation Number 1</u>**. On his monthly reports from February through May 2004, defendant falsely stated his employment, his supervisor, his job title, his wages, and his cash inflow.  He was not employed by Apex Marketing as a marketing rep, Shawnette Sampson was not his supervisor, and he was not paid wages by Apex Marketing.  He did, however, receive considerably more funds from Prime Realty that he listed in his monthly financial statement.  He fabricated paycheck stubs to submit to his probation officer.  He also failed to disclose that he was living at 10222 S. Waters Avenue in late 2004.  The statements were materially false and the defendant knew them to be so. A  preponderance of the evidence shows that defendant committed the crime of making false statements in violation of 18 U.S.C. §1001.

I recommend the Court find that defendant did not violate his supervised release as alleged in **<u>Violation Number 2.</u>**  This violation charges the defendant with committing the crime of wire fraud.  A preponderance of the evidence shows that the defendant prepared false mortgage loan documents, as a result of which funds were transmitted by interstate wire to Prime Realty's bank account and to the real estate escrow account.  18 U.S.C. §1343 provides that it shall be illegal to "transmit or cause[s] to be transmitted by means of wire...in interstate or foreign commerce, any writings...for the purpose of executing [a scheme or artifice to defraud or to obtain money by means of false or fraudulent pretenses]".  While the evidence shows that the funds were "caused to be transmitted" to the defendant as a result of the false writings, the evidence does not establish

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 9

01  that the defendant himself transmitted any documents by means of interstate wire.  While the

02  defendant's actions did set in movement a chain of events that caused funds to be transmitted by

03  means of interstate commerce, it does not seem reasonable to utilize the relaxed preponderance

04  of the evidence standard to find that the defendant committed the crime of wire fraud when the

05  wire transfer was incidental to the rest of the transaction. Furthermore, these same transactions

06  are addressed in other alleged violations.  Therefore, I do not believe that it would be in the

07  interests of justice to find that the defendant committed this alleged violation.

08       I recommend the Court find that defendant violated his supervised release as alleged in

09  **Violation Number 3**.  Ms. Ali testified credibly that the defendant demanded a meeting with her

10  when he learned that she had gone to the lending institution to tell them she had put information

11  on the loan application that was not true.  While the defendant told her to cooperate with the FBI,

12  he also told her what to say to them, which information would have been false, and which the

13  defendant knew to be false.  18 U.S.C. §1512(b)(3) makes it criminal to "corruptly persuade"

14  another person, or attempt to do so, to engage in misleading conduct to hinder, delay or prevent

15  the communication to a law enforcement officer of information relating to,      *inter alia,* the

16  commission of a federal offense or violation of conditions of supervised release.  To "corruptly

17  persuade" is to be "motivated by an inappropriate or improper purpose to convince another to

18  engage in a course of behavior", and can be construed to include non-coercive attempts to tamper

19  with a witness. *United States v Khatami*, 280 F.3d 907, 911-912 (9th Cir. 2001). A preponderance

20  of the evidence shows that defendant attempted to persuade Ms. Ali to lie to the FBI.

21       I recommend the Court find that defendant violated his supervised release as alleged in

22  **Violation Number 4 and 6.**  The evidence is overwhelming that the defendant was conducting

23  business under the name of Prime Realty.  He told this to the three straw buyers.  The seller of the

24  Tacoma property testified that the defendant, acting as Prime Realty, negotiated the property

25  purchase. The defendant, in the capacity of Prime Realty, prepared the loan application and

26  mortgage documents for the straw buyers, and arranged for funds from the loan proceeds to go

01  to Prime Realty.  He was paid thousand of dollars by Prime Realty, of which some payments were

02  specifically designated as draws.  The defendant maintained an office in Renton where he

03  conducted business.  He  went to some lengths to conceal his relationship to Prime Realty by

04  creating a sham employer called Apex Marketing for his month reports to his probation officer.

05  A preponderance of the evidence shows that the defendant failed to disclose his interest in and

06  self-employment with Prime Realty to his probation officer.

07       I recommend the Court find that defendant violated his supervised release as alleged in

08  **Violation Number 5.**  This violation relates to special condition #7, which requires the defendant

09  to "maintain a single checking account in his name.  Defendant shall deposit all income, monetary

10  gains or pecuniary proceeds, and make use of this account for payment of all personal expenses.

11  This account, and all other bank accounts, must be disclosed to the probation office."  (DKT 22)

12  Month after month, the defendant reported to his probation officer that he did not have a checking

13  or savings account. (EX 8-27) The evidence shows, however,  that checks were regularly issued

14  to the defendant from a Prime Realty bank account, which he cashed.  The checks were  issued

15  by Brenda Frost, so there is no evidence that the defendant was a signatory on the Prime Realty

16  bank account.  Therefore, the evidence does not show that the defendant violated special condition

17  #7 by maintaining a bank account which he failed to disclose.  The evidence does permit an

18  inference, however, that the defendant was utilizing these disbursements to avoid maintaining a

19  bank account that would have to be disclosed to his probation officer.  Special condition #7 not

20  only required the defendant to disclose bank accounts that he did maintain, but affirmatively

21  required him to maintain an account into which he must deposit all income and from which he

22  must pay all expenses.   As the defendant's probation officer testified, an important part of

23  supervision with a financial fraud defendant is to monitor the individual's finances.   A

24  preponderance of the evidence shows that the defendant did not maintain a single bank account,

25  and in fact took actions to circumvent this condition of supervised release.

26       I recommend the Court find that defendant violated his supervised release as alleged in

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 11

01 **Violation Number 7.**  The evidence establishes that at least from August through November

02 2004, the defendant was maintaining a residence at 10222 Waters Avenue South, which was one

03 of the addresses which was the subject of the fraudulent transactions, and was not the address that

04 he listed on his monthly report. His ex-wife Ena Robinson brought their children to that address

05 to stay with him on at least ten occasions, sometimes on the weekend or sometimes during the day

06 for a couple of hours.  His belongings were in the house, he had a bed in the house, and he always

07 answered the door when she knocked.  The children stayed there with him. He also told Ms. Ali

08 that he was living at 10222 Waters Avenue South when they stopped by the house on the way to

09 fill out some of the loan documents.  The purpose of standard condition #6 is to allow defendant's

10 probation officer to keep track of where he is living, to check on his activities and whereabouts,

11 and to conduct unannounced visits if the probation officer chooses to do so. A preponderance of

12 the evidence shows that the defendant withheld this information from his probation officer.

13       I recommend the Court find that defendant violated his supervised release as alleged in

14 **Violation Number 8.**  Standard condition #5 not only requires the defendant, by inference, to

15 avoid unlawful employment, but also requires him to secure and work regularly at        lawful

16 employment.  With the possible exception of June and July 2003 when the defendant reported

17 employment at CNA Construction (EX 8 and 9), a preponderance of the evidence establishes that

18 the defendant failed to maintain lawful employment during the duration of his supervised release.

19 Indeed, a preponderance of the evidence establishes that he was engaged in fraudulent, unlawful

20 activities.

21       I therefore recommend the Court find defendant violated his supervised release as alleged

22 in Violations 1, 3, 4, 5, 6, 7, and 8, and that the Court conduct a hearing limited to the issue of

23 disposition.  The next hearing will be set before Judge Zilly.

24 / / /

25 / / /

26 / / /

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 12

01     Pending a final determination by the Court, defendant has been detained.

02     DATED this  4th  day of August, 2005.

03

04                                                    _Mary Alice Theiler_
                                                     Mary Alice Theiler
05                                                   United States Magistrate Judge

06

07

08   cc:     District Judge:          Honorable Thomas S. Zilly
             AUSA:                    Jeffrey B. Coopersmith
09           Defendant's attorney:    Kenneth E. Kanev
             Probation officer:       Michael K. Banks
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO
ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE 13